144

George A. Gray and Dorothy S. Gray, His Wife, Appellants *v.* County of Allegheny, Appellee.

Argued November 3, 1978, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Leonard M. Mendelson,* with him *Hollinshead and Mendelson,* for appellants.

*Samuel P. Kamin,* Assistant County Solicitor, with him *Alexander J. Jaffurs,* County Solicitor, for appellee.

OPINION BY JUDGE BLATT, July 10, 1979:

George A. Gray and his wife Dorothy S. Gray (appellants) appeal here from an order of the Court of Common Pleas of Allegheny County which held that they were not entitled to special damages under Section 615(b) of the Eminent Domain Code[1] (Code).

The appellants conveyed a parcel of real estate upon which their home was located to the County of Allegheny (County) in 1970 for the expansion of the Greater Pittsburgh Airport. Pursuant to an agreement entered into between them and the County, they were paid $25,300, and the agreement reserved to them the right of special damages under the Code to the same extent as if the property had been condemned. Within a year, the appellants purchased a replacement dwelling for $26,000. Subsequently they made a claim under Section 615(a) of the Code which was denied by the Board of Viewers. Upon appeal to the lower court, the parties entered into a Stipulation of Facts and requested the lower court to determine whether or not the appellants were entitled to compensation under Section 615(b) of the Code as it existed subsequent to the December 9, 1969 amendment and prior to the December 29, 1971 amendment, and the lower court held that they were not entitled to such compensation. The appellants' exceptions to that order were denied by the court en banc and this appeal followed.

The relevant Section 615(b) of the Code provided as follows during the time period in question:

---

[1] Act of June 22, 1964, Spec. Sess., P.L. 84, *as amended,* 26 P.S. §1-615(b) repealed by Act of December 29, 1971, P.L. 635. *See now* 26 P.S. §§1-602A, 1-603A.

(b) In addition to amounts otherwise authorized, the condemnor *shall make a payment to any individual or family displaced from any dwelling not eligible to receive a payment under subsection (a)* to this section which dwelling was actually and lawfully occupied by such individual or family for not less than ninety days prior to the condemnation. Such payment, not to exceed fifteen hundred dollars ($1500), shall be the amount which is necessary to enable such person to lease or rent for a period not to exceed two years, or to make the down payment on the purchase of a decent, safe and sanitary dwelling of standards adequate to accommodate such individuals or family in areas not generally less desirable in regard to public utilities and public commercial facilities. (Emphasis added.)

26 P.S. §1-615(b).

The lower court held that, although the appellants were not entitled to compensation under Section 615 (a), they were factually eligible to be *considered* for compensation under that section. It concluded, therefore, that the appellants were not entitled to compensation under Section 615(b). We find this rationale to be without merit. We do not believe that this section bases eligibility upon whether or not a family or individual is "factually eligible to be *considered*" for compensation under Section 615(a). Rather, we believe that this section clearly bases eligibility upon whether or not the claimant is actually "eligible to receive a payment under subsection (a)." 26 P.S. §1-615(b). The appellants here were not eligible for any compensation under 615(a), and, therefore, they are entitled to compensation under Section 615(b) of the Code in an amount not to exceed $1500 which was necessary to enable them to make the down payment on the purchase of their replacement dwelling.

The lower court therefore is reversed, and we remand this matter to that court for judgment to be entered in favor of the appellants in such appropriate amounts as may be determined by that court.

ORDER

AND Now, this 10th day of July, 1979, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed and the case is remanded for proceedings consistent with this opinion.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. Former Section 615 of the Eminent Domain Code read in its entirety as follows:

Section 615. Replacement Housing.—(a) In addition to amounts of damages otherwise authorized, the condemnor shall, as is hereinafter provided, make a payment to the condemnee whose real property is improved by a single, two, or three-family dwelling actually owned and occupied by the condemnee for not less than one year prior to the condemnation. Such payment, not to exceed five thousand two hundred dollars ($5,200) shall be the amount, if any, which, when added to the acquisition payment, equals the average price required for a comparable dwelling determined to be a decent, safe and sanitary dwelling adequate to accommodate the condemnee, reasonably accessible to public services and places of employment and available on the private market. Such payment shall be made only to a condemnee who purchases and occupies a dwelling within one year subsequent to the date on which he is required to move from the dwelling acquired by the condemnor.

(b) In addition to amounts otherwise authorized, the condemnor shall make a payment to any individual or family displaced from any dwelling not eligible to receive a payment under subsection (a) of this section which dwelling was actually and lawfully occupied by such individual or family for not less than ninety days prior to the condemnation. Such payment, not to exceed fifteen hundred dollars ($1500), shall be the amount which is necessary to enable such person to lease or rent for a period not to exceed two years, or to make the down payment on the purchase of a decent, safe and sanitary dwelling of standards adequate to accommodate such individual or family in areas not generally less desirable in regard to public utilities and public and commercial facilities.

Subsection (a) defines those persons who are eligible to receive a payment under subsection (a) as ''condemnee[s] whose real property is improved by a . . . dwelling actually owned and occupied by the condemnee[s] for not less than one year prior to the condemnation.'' The Grays were clearly condemnees whose real property was improved by a dwelling actually owned and occupied by them for not less than one year. They were therefore eligible to receive a payment under subsection (a). They did not receive a payment under subsection (a), not because they were persons who were ineligible, but because the Board of View found that the acquisition payment made to them by the condemnor exceeded the average price which would be required for the purchase of a comparable dwelling. Since the Grays were persons who were eligible to receive a payment under subsection (a), they did not qualify for benefits under subsection (b) because subsection (b) provided benefits only to ''individual[s] and famil[ies] not eligible to receive . . . payments under subsection (a).''

Subsection (b) provided for payments to persons not eligible under subsection (a) who were displaced from a dwelling which had been occupied for not less than 90 days prior to condemnation. The Legislature's provision for the payment to homeowners of one year's standing of the difference between the acquisition payment made them and the average price for a comparable dwelling up to a limit of $5000 and its provision for the payment of rental equivalency or down money up to $1500 to other displaced persons, strikes me as altogether reasonable. It was certainly not unreasonable, in my view, to deny a replacement housing allowance to an owner who has received an amount in damages equal to or in excess of the cost of comparable replacement housing.

In short, it seems to me plain that the phrase "not eligible to receive payment under subsection (a)" as used in subparagraph (b) was descriptive of a class of persons affected by a condemnation and that it had no reference to whether those eligible had got or would get a payment under the standard for payment in subsection (a). Since the Grays were eligible to receive a payment under subparagraph (a), they were not eligible to receive one under subparagraph (b).